The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties prior to the hearing in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Clarendon National Insurance was the carrier at risk.
3. An employer-employee relationship existed between defendant-employer and plaintiff at the time of plaintiff's alleged injury/occupational disease of January 8, 2002.
4. Plaintiff's average weekly wage is $888.40, yielding a compensation rate of $592.25.
5. The parties stipulated into evidence as Stipulated Exhibit 1 the following:
 a. Industrial Commission forms;
 b. Medical records;
 c. Dr. Burroughs letter;
 d. Rehabilitation research, job analysis, and opinion by Steven Carpenter dated November 12, 2002;
 e. Defendant's discovery responses;
 f. Job description;
 g. Steven Carpenter's curriculum vitae;
 h. Videotape of various heavy equipment operators performing job duties;
 i. Wage chart;
 j. Medical record reviewed by Dr. Dupuy;
 k. Job analysis by Alex Arab;
 l. Plaintiff's recorded statement; and
 m. Video of plaintiff operating a track hoe.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 56 years old at the time of hearing before the Deputy Commissioner. He completed the eleventh grade and obtained a GED when he was 40 years old. Plaintiff has been a heavy equipment operator since he was nineteen years old.
2. Plaintiff began his employment with defendant-employer in 1990 as a track backhoe operator. He worked as a hands-on foreman running a backhoe.
3. The backhoe operated by plaintiff is a grading machine, which moves on a track instead of tires and has a large bucket on the front to move the material. Plaintiff worked approximately nine hours per day operating the track hoe, one half hour per day greasing the machine and one hour per day setting lasers, digging, and supervising. Plaintiff worked six days per week.
4. Plaintiff sits in a seat and uses joysticks to operate the bucket. The tracks on the bottom of the track hoe are run by pedals operated by the operator's feet. Plaintiff's backhoe does not have armrests but plaintiff would be unable to perform his duties moving the bucket with his arms on armrests because he moves his arms back and forth constantly.
5. Plaintiff has worked at his job for a very long time and is extremely good at it, and he pushes himself to work as fast as possible. Plaintiff has always operated the track hoe faster because that makes more profit for his employer. Exhibit H, a videotape of various heavy equipment operators performing their job duties, depicts job duties as generally performed by plaintiff. However, plaintiff would operate his machine significantly faster than those operators were performing their duties. Exhibit M, a videotape of Mr. Hassinger, plaintiff's employer, operating a track hoe does not accurately reflect the way plaintiff would perform his duties. Mr. Hassinger was merely moving the levers a bit but was not actually working. As Mr. Hassinger was not performing actual job duties, there was a significant difference between his movements and those required to actually perform the job. Furthermore, plaintiff's track hoe does not have an armrest.
6. In 2000, plaintiff complained to Dr. John Mann of left arm and shoulder pain. Plaintiff continued to have worsening pain in his shoulder and arm, and on January 8, 2002 presented to Dr. Paul Burroughs, a board-certified orthopaedic surgeon. Plaintiff underwent a MRI arthrogram, which revealed anterior and posterior labral tears as well as a severe partial tear at the distal and supraspinatus tendon in his left shoulder. Plaintiff was written out work on January 8, 2002, for four weeks. In February 2002, plaintiff underwent a left shoulder arthroscopy with debridement of labral tear and arthroscopic repair performed by Dr. Burroughs.
7. By May 24, 2002, plaintiff had continuing pain with right shoulder rotator cuff tendonitits/impingement, left shoulder AC joint degenerative joint disease and left elbow lateral epicondylitis.
8. On July 9, 2002, plaintiff underwent a left shoulder acromioclavicular joint opened distal clavicle excision.
9. After each of plaintiff's surgeries he was instructed to refrain from using that extremity at his normal work but was unable to comply with these restrictions or to take adequate time off work because he was not receiving a salary or workers' compensation benefits.
10. Following his two surgical procedures, plaintiff has continued to have rotator cuff tendonitis and impingement as well as bilateral lateral epicondylitis.
11. As of July 8, 2003, plaintiff continued to have left shoulder pain and bilateral lateral epicondolylitis.
12. Dr. Burroughs, after reviewing both videotapes, was of the opinion that plaintiff's job duties were repetitive. He was further of the opinion that the motions plaintiff made with his arms and hands caused plaintiff's bilateral lateral epicondylitis. Dr. Burroughs was also of the opinion that plaintiff's job duties caused plaintiff's bilateral shoulder problems and bilateral degenerative joint disease of the shoulder.
13. Dr. Burroughs was of the opinion that plaintiff's labral tear to his left shoulder was caused by his employment with defendant-employer.
14. Dr. Burroughs was of the opinion that plaintiff's job duties placed him at an increased risk of developing bilateral lateral epicondylitis than members of the general public not so employed.
15. A March 6, 2003, letter from Dr. Burroughs indicated that he was of the opinion that plaintiff's job required repetitive motion and that plaintiff was at a greater risk for developing repetitive motion type diseases than the general public. He was further of the opinion that plaintiff's lateral epicondylits and shoulder pain would be more likely to develop in that type of job.
16. Although Dr. Burroughs did render a general opinion involving plaintiff's greater risk for developing repetitive motion diseases than the general public, he did not specifically indicate that plaintiff was at a greater risk of contracting shoulder disease/labral tear than the public generally.
17. Dr. Burroughs was of the opinion that plaintiff would continue to have bilateral lateral epicondylitis and bilateral shoulder pain as long as he continued to operate and work on the track hoe. Dr. Burroughs was of the opinion that plaintiff would not be at maximum medical improvement until plaintiff had not been working using the joystick maneuvers for approximately one year, and only at that time would he be comfortable giving plaintiff a rating for his elbows or shoulders.
18. Dr. Burroughs was of the opinion that plaintiff should not perform job duties that involved the use of the joystick and should probably change jobs.
19. Defendants retained Dr. David Dupuy to perform a medical records review of plaintiff's case as well as review the notes of Alex Arab and the two videotapes of plaintiff's job duties that were in evidence. Plaintiff has never been seen or treated by Dr. Dupuy.
20. Based upon his examination of plaintiff's medical records, the videotapes and the report of Alex Arab, Dr. Dupuy was of the opinion that plaintiff's condition had been accurately diagnosed and adequately treated by Dr. Burroughs. However, Dr. Dupuy was of the opinion that plaintiff's shoulder condition/labral tear and bilateral lateral epicondylitis were not caused by plaintiff's employment and plaintiff's employment did not place him at a greater risk of contracting these conditions than members of the general public not so employed.
21. The Full Commission gives greater weight to the opinions of plaintiff's treating physicians and finds that on January 28, 2003, plaintiff contracted bilateral lateral epicondylitis.
22. Plaintiff's bilateral lateral epicondylitis was caused by the repetitive motion required by his job duties with defendant-employer.
23. Plaintiff was placed at a greater risk of contracting bilateral lateral epicondylitis because of his job duties with defendant-employer than members of the general public not so employed.
24. Plaintiff should not be performing the job duties of a track backhoe operator because they aggravate his bilateral lateral epicondylitis. Plaintiff's job as a track backhoe operator involves repetitive motion that would further injure and aggravate plaintiff's bilateral lateral epicondylitis; and therefore, is unsuitable for him.
25. Plaintiff has not yet reached maximum medical improvement in regard to his bilateral lateral epicondylitis.
26. On January 8, 2002, plaintiff contracted a left-sided labral tear and bilateral degenerative joint disease of his shoulders as a direct and proximate result of his repetitive job duties with defendant-employer.
27. Based upon the evidence of record, the Full Commission finds that plaintiff has failed to establish by the greater weight of the evidence that his job duties with defendant-employer placed plaintiff at an increased risk of developing the left-sided labral tear and bilateral degenerative joint disease of the shoulders than members of the general public not so employed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On January 28, 2003, plaintiff contracted bilateral lateral epicondylitis, an occupational disease, as a result of the repetitive motion required by his job duties with defendant-employer. N.C. Gen. Stat. § 97-53(13). Plaintiff was placed at a greater risk of contracting bilateral lateral epicondylitis because of his job duties with defendant-employer than members of the general public not so employed. Id.
2. Plaintiff's job as a track backhoe operator involves repetitive motion that would further injure and aggravate his bilateral lateral epicondylitis; and therefore, the job is unsuitable for him. Plaintiff is entitled to temporary total disability compensation at the rate of $592.25 per week until suitable employment is obtained for him within the restrictions set out by Dr. Burroughs or until he reaches maximum medical improvement. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to medical treatment for his occupational disease of bilateral lateral epicondylitis for as long as the same is reasonably designed to effect a cure, provide relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff has failed to establish by the greater weight of the evidence that his job duties with defendant-employer placed him at an increased risk of developing the left-sided labral tear and bilateral degenerative joint disease of the shoulders than members of the general public not so employed. N.C. Gen. Stat. §97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $592.25 per week from the February 28, 2005, the date of the Deputy Commissioner's Opinion and Award, and continuing until suitable work is obtained for plaintiff within the restrictions set out by Dr. Burroughs for plaintiff's bilateral lateral epicondylitis, or until plaintiff reaches maximum medical improvement. This compensation shall be subject to a reasonable attorney's fee provided herein. The portion of this award that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay for medical treatment for plaintiff's bilateral lateral epicondylitis as long as the same is reasonably designed to effect a cure, provided relief, or lessen plaintiff's period of disability.
3. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein. Fees that are based upon the portion of the award that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, defendants shall pay to plaintiff's counsel every fourth compensation check due plaintiff.
4. Defendants shall pay the costs, including the expert witness fees in the amount of $440.00 for Dr. Burroughs, and $390.00 for Dr. Dupuy, if not paid by previous order.
This 18th day of August 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER